**UNITED STATES of America**

v.

**David G. LEE and Carole Lee.**

**UNITED STATES of America**

v.

**Paul M. LEVINE.**

**UNITED STATES of America**

v.

**Jerry Irwin HOCHMAN.**

**UNITED STATES of America**

v.

**Michelle M. ALEXANDER.**

**UNITED STATES of America**

v.

**William J. SCHNEIDER.**

**Civ. Nos. C–87–702–A to C–87–706–A.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 23, 1987.

Myles Eric Eastwood, Jones Brown & Brennan, J.D. Roy Atchison, Office of U.S. Atty., Atlanta, Ga., for appellant.

Rose Higby Staples, Paul C. Parker & Associates, Rose Higby Staples, Decatur, Ga., Robert Lightfoot Coley, Office of the Trustee, Atlanta, Ga., for appellees.

## ORDER

O'KELLEY, Chief Judge.

Presently before the court are five appeals from the bankruptcy court. The appeals involve similar facts and identical legal issues, i.e., whether the dischargeability of a Health Education Assistance Loan (HEAL) under Chapter 13, title 11 U.S.C., is governed by 11 U.S.C. § 1328(a) or by 42 U.S.C. § 294f(g) and when during a Chapter 13 case may the government raise the dischargeability issue. As none of the bankruptcy court's factual findings have been appealed, the only issues before this court are purely legal. The bankruptcy court made the following findings of fact:

"I. IN RE DAVID G. LEE and CAROLE A. LEE [C–87–702–A]

"The following facts are undisputed as stipulated by the parties. See Stipulation, June 13, 1986. David Lee was granted HEAL loans in the sum of $1,500, $5,750, and $8,500 on February 26, 1982, June 26, 1982 and March 7, 1983 respectively. Debtor Carole Lee was granted a HEAL loan on September 29, 1982 in the sum of $8,000. Both debtors graduated from Life Chiropractic College on December 17, 1983, and repayment on the notes was to begin October 1, 1984. See Government Exhibits A, B, C, and D, attached to complaint.

"Debtors defaulted and filed a joint petition under Chapter 13 of the Bankruptcy Code on October 9, 1984. Chase Manhattan Bank, who originated part of the loans, was listed on debtors' schedules and received notice of the creditors' meeting. HHS did not receive notice of this case since they were not scheduled as a creditor. See Order and Notice for Meeting of Creditors, page 2. On November 23, 1984, Chase Manhattan Bank filed an insurance claim with HHS on David Lee's HEAL loan note. Exhibit E. they assigned their claim to HHA. Exhibit C, page 2. On November 30, 1984, the bank filed a proof of claim against David Lee. HHS paid the insurance claim on December 3, 1984. Exhibit H. Debtors' thirty-six month, twenty (20%) percent composition plan was confirmed by Order of January 29, 1985. No appeal was taken from the Order of Confirmation which is a final order.

"The Student Loan Marketing Association, Sallie Mae, purchased Carole Lee's note from First American Bank on October 18, 1982 and filed an insurance claim with HHS on Carole Lee's loan on March 1, 1985. Exhibit I. Sallie Mae filed a proof of claim on March 11, 1985. HHS paid the insurance claim and received an assignment of the note. Exhibits J, K. HHS claims David Lee is indebted to it in the amount of $10,604.85 plus interest, as of February 28, 1985 and Carole Lee in the

amount of $10,524 plus interest. Exhibits H, K (HHS certificates of indebtedness). On March 11, 1986, HHS filed a motion to vacate confirmation order and to modify plan to exclude HEAL loan as well as a complaint to revoke dischargeability.

"II. IN RE PAUL M. LEVINE [C–87–703–A]

"Defendant-debtor Paul Levine obtained a HEAL loan, in order to attend Life Chiropractic College, on January 3, 1983 in the sum of $12,500. Sallie Mae purchased debtor's note from the First Virginia Bank on January 17, 1983. See Government Exhibits A, B and C. Payments on the note were to commence June 1, 1984. Exhibit E (certificate of indebtedness). Debtor defaulted on this loan as no payments were made. On January 16, 1985, debtor filed a joint voluntary petition under Chapter 13. In his Chapter 13 Statement, debtor listed an indebtedness to First American Bank, who originated the loan, representing the HEAL loan in the sum of $12,000. HHS received no notice of the pending Chapter 13 case prior to confirmation. See Order and Notice for Meeting of Creditors, page 2.

"Sallie Mae filed a proof of claim in this case on March 11, 1985 claiming an indebtedness of $16,455.82. Debtor proposed a thirty-six month, one (1%) percent composition plan. Neither HHS nor Sallie Mae appeared or opposed the confirmation of this plan. On May 28, 1985, the plan was duly confirmed by the Court and no appeal was taken by any party.

HHS paid Sallie Mae's insurance claim in the amount of $16,982 on June 18, 1985 and received an assignment of the note. Exhibits D, E. On March 11, 1986, nine months after confirmation, HHS simultaneously filed a motion to vacate confirmation order and to modify plan to exclude HEAL loan and the underlying adversary complaint to revoke dischargeability of HEAL loan.

"III. IN RE JERRY HOCHMAN [C–87–704–A]

"Debtor obtained HEAL loans in the amount of $5,903 and $7,624 on June 3, 1982 and November 26, 1982, respectively, in order to attend Life Chiropractic College.

Exhibits C, D. Sallie Mae purchased debtor's notes from Chase Manhattan Bank, who originated the loans, on May 2, 1983. See Proof of Claim. Repayment was to commence on January 1, 1984. Debtor defaulted on the loans as only $95.52 in payments were made during three successive forbearance periods until May 31, 1985. Exhibit G (certificate of indebtedness). On March 13, 1985 debtor filed a voluntary joint petition under Chapter 13. In his Chapter 13 Statement debtor listed an indebtedness to 'S.L.R.C. for HEAL Loan' for $17,300.94.

"Sallie Mae filed a proof of claim on May 24, 1985 for $18,778.11. HHS has paid Sallie Mae's insurance claim on May 15, 1985 for $18,630 and received an assignment of the note. Exhibits G, H. Debtor proposed an amended thirty-six month, eleven (11%) percent composition plan. Sallie Mae was served with a notice of rescheduled hearing on confirmation of plan on June 5, 1985. Neither HHS nor Sallie Mae appeared or opposed confirmation of this plan. On July 17, 1985, the plan was duly confirmed by the Court and no appeal was taken. On March 11, 1986, some eight months later, HHS simultaneously filed a motion to vacate confirmation order and to modify debtor's plan to exclude HEAL loans and a complaint to revoke dischargeability.

"IV. IN RE WILLIAM J. SCHNEIDER [C–87–706–A]

"Debtor obtained two HEAL loans in the sum of $9,000 and $6,316 on September 29, 1982 and August 1, 1983, respectively, in order to attend Life Chiropractic College. Sallie Mae purchased debtor's notes from First American Bank, who originated the loans, on October 18, 1982. Repayment was to commence on January 1, 1986 after several forbearance periods. Debtor defaulted on these loans as no payments were made by him. See Declaration of John F. Haczewski, attached to HHS proof of claim. On March 31, 1986, debtor filed a voluntary petition under Chapter 13. In his Chapter 13 Statement, debtor listed an indebtedness to the Student Loan Repayment Center in Merrifield, Virginia for his

HEAL loan in the sum of $21,640. Sallie Mae filed a proof of claim on June 2, 1986. HHS paid an insurance claim filed by Sallie Mae on June 6, 1986, and received an assignment of the note. On October 1, a Notice and Order was filed reciting that these notes had been assigned by Sallie Mae to HHS. HHS filed a proof of claim on September 5, 1986, for $22,768. Debtor proposed an amended sixty month, twelve (12%) percent composition plan, filed September 19, 1986. HHS filed an objection to confirmation of plan on September 11, 1986. According to debtor's response to HHS' objection, debtor graduated and practiced from July 1984 until November 1985. Chapter 13 Statement, paragraph 2(e), page 3.

"V. IN RE MICHELLE ALEXANDER. [C–87–705–A]

"Debtor obtained HEAL loans in the sum of $5,650, $6,365 and $10,000 on August 30, 1979, June 24, 1980 and August 17, 1981 respectively, in order to attend the School of Veterinary Medicine at Tuskegee Institute. Though she was later dropped from that school for academic reasons, debtor graduated from Howard University with a journalism degree on May 12, 1984. Sallie Mae purchased debtor's notes from Chase Manhattan Bank who originated the loans. Repayment was to commence on March 15, 1985, after three deferments, but debtor was granted a six-month forbearance until September 1, 1985. Debtor defaulted on the loans and allegedly made two payments to Sallie Mae. On May 9, 1986, debtor filed a voluntary petition under Chapter 13. In her Chapter 13 Statement, debtor listed an indebtedness to the HEAL Program in the sum of $22,162.72.

"HHS filed a proof of claim on July 9, 1986 claiming an indebtedness of $42,759. HHS had received an assignment of debtor's note after paying Sallie Mae on an insurance claim on April 19, 1986. *See* Declaration of John F. Haczewski, attached to proof of claim. Debtor proposed a thirty-six month, thirteen (13%) percent composition plan. HHS filed an objection to confirmation on July 25, 1986. The Court confirmed debtor's plan on October 16, 1986,

subject to a determination with regard to inclusion of debtor's HEAL loans in her composition plan."

Findings of Fact, Bankruptcy Court Order, February 27, 1987.

### Discharge of a HEAL loan

The central issue for determination by this court is whether a HEAL loan is dischargeable in a Chapter 13 bankruptcy pursuant to the requirements of only 11 U.S.C. § 1328(a) or whether a HEAL loan is dischargeable in a Chapter 13 bankruptcy pursuant to the requirements of *both* 11 U.S.C. § 1328(a) *and* 42 U.S.C. § 294f(g). Section 1328(a) provides that

As soon as practicable after completion by the debtor of all payments under the [Chapter 13] plan, unless the court approves a written waiver of discharge executed by the debtor after the order of relief under this chapter, the court shall grant the debtor a discharge of all debts provided by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title [certain long term debts]; or

(2) of the kind specified in section 523(a)(5) of this title [alimony and child support].

Thus, upon completion of all payments due under a confirmed Chapter 13 plan, the debtor may obtain a discharge as to all debts included within the plan except certain long term debt and alimony and child support. Clearly, therefore, upon completion of the required payments the debtor can obtain a discharge under § 1328(a) of general student loans if those loans were included within the Chapter 13 plan. *See In re Reese*, 38 B.R. 681, 682 (Bkrtcy.N.D. Ga.1984). This ability to obtain a discharge of general student loans under § 1328(a) is in contrast to the other discharge provisions of the bankruptcy code, 11 U.S.C. §§ 747, 1141, 1228(a) and (b), and 1328(b), which, pursuant to 11 U.S.C. § 523(a)(8), exempt from discharge student loans unless

(A) Such loan first became due before five years (exclusive of any applicable

suspension of the payment period) before the date of the filing of the petition; or (B) excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents.

11 U.S.C. § 523(a)(8). The legislative history of the enactment of the Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2650 (1978), indicates intent by Congress not to apply the general student loan exemption of § 523(a)(8) to a discharge under § 1328(a). *See* Bankruptcy Court Order, February 27, 1987, at 24–29. Such an intent is further indicated by two unsuccessful attempts, in 1979 and again in 1981, to amend § 1328(a) to exempt general student loans from a discharge under that section. *See* S. 658, 96th Cong., 1st Sess. (1979); S. 863, 97th Cong., 1st Sess. (1981).

In 1981, Congress enacted the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981), which, among its numerous provisions, reenacted 42 U.S.C. § 294f(g). Reenacted section 294f(g) reads

A debt which is a loan insured under the authority of this subpart [a HEAL loan] may be released by a discharge in bankruptcy under Title 11 only if such discharge is granted—

(1) after the expiration of the 5–year period beginning on the first date, as specified in subparagraphs (B) and (C) of section 294d(a)(2) of this title, when repayment of such loan is required;

(2) upon a finding by the Bankruptcy Court that the nondischarge of such debt would be unconscionable; and

(3) upon the condition that the Secretary shall not have waived the Secretary's rights to apply subsection (f) [providing for setoff of a defaulted HEAL against any Federal reimbursements or payments for health services made to a HEAL borrower] of this section to the borrower and the discharged debt.

Thus, under § 294f(g), a HEAL loan may be discharged in bankruptcy only if the discharge is granted after five years from the date repayment of the loan is scheduled to commence, and then only if a finding has

been made that refusal to discharge the loan would be unconscionable and that the Secretary of Health and Human Services has not waived certain set off rights granted under § 294f(f).

The debtors in the instant Chapter 13 cases contend that § 294f(g) was not intended to effect discharges under § 1328(a). Rather, the debtors contend that § 294f(g) was intended only to make more stringent the exemption provisions of § 523(a)(8) in the case of HEAL loans. The government argues that § 294f(g) was intended, as indicated by its plain meaning, to apply to *all* discharges under title 11, including discharge under § 1328(a). In attempting to reconcile the "superdischarge" provision of § 1328(a) with the restrictive provisions of § 294f(g), the Seventh Circuit has applied the following statutory analysis:

Where two statutes deal with the same subject matter, they are to be read in *pari materia* and harmonized when possible. *Jones v. St. Louis–San Francisco Ry. Co.*, 728 F.2d 257, 262 (6th Cir.1984); *Matter of Robison*, 665 F.2d 166, 171 (7th Cir.1981). We are guided by certain tenets of statutory construction. First, a specific statute takes precedence over a more general statute. *Busic v. United States*, 446 U.S. 398, 406, 100 S.Ct. 1747, 1752, 64 L.Ed.2d 381 (1980); *United States v. Olinger*, 759 F.2d 1293, 1299 (7th Cir.), *cert. denied*, [474] U.S. [839], 106 S.Ct. 120, 88 L.Ed.2d 98 (1985). Second, a later statute may limit the scope of an earlier statute. *Davis v. United States*, 716 F.2d 418, 428 (7th Cir.1983). Section 294f(g) is both the more specific and the later of the two statutes. Section 294f(g) is much more limited in scope than section 1328(a). Section 1328(a) deals generally with the discharge of all debts under Chapter 13 whereas section 294f(g) deals only with the discharge of HEAL loans. Section 1328(a) was enacted in 1978. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, 92 Stat. 2650 (1978). Section 294f(g), as originally enacted in 1976, was repealed in 1978 as unnecessary because the provisions for the discharge of student loans were set

forth in the Bankruptcy Code. *See* 1 *Collier on Bankruptcy* ¶ 5.27, at 5–124 (15th ed. 1985). Congress, however, re-enacted section 294f(g) in 1981 and made the discharge of HEAL loans even more difficult than the original enactment by adding subsections (2) and (3). Omnibus Budget and Reconciliation Act of 1981, Pub.L. No. 97–35, 95 Stat. 357 (1981). In reenacting section 294f(g), Congress was presumably aware of section 1328(a)'s more general discharge provision and other previously enacted provisions of the Bankruptcy Code dealing with the discharge of educational loans. *See Erlenbaugh v. United States*, 409 U.S. 239, 243–44, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972). To give meaning to both section 294f(g) and section 1328(a), section 294f(g) must be the limited exception to section 1328(a)'s general rule that educational loans are dischargeable. Accordingly, when any debtor is seeking to discharge an HEAL loan, he or she must meet the three requirements specified in section 294f(g).

*Matter of Johnson*, 787 F.2d 1179, 1181–82 (7th Cir.1986) (footnotes omitted). The bankruptcy court in the instant cases, however, concluded in a very thorough and scholarly opinion that despite the plain meaning of § 294f(g), Congress did not intend when enacting that section to affect discharge under § 1328(a). After review of the analysis in *Johnson* and of the analysis of the bankruptcy court below, this court is convinced that § 294f(g) was in fact intended to apply to all discharges under title 11, including any discharges under § 1328(a). *See In re Gronski*, 65 B.R. 932, 935–36 (Bkrtcy.E.D.Penn.1986); *In re Cleveland*, 64 B.R. 810, 812 (Bkrtcy.S.D. Cal.1986). *Cf. In re Hines*, 63 B.R. 731 (Bkrtcy.D.S.D.1986); *In re Hampton*, 47 B.R. 47 (Bkrtcy.N.D.Ill.1985).

The court simply cannot ignore the plain meaning of the reference in § 294f(g) to any discharge under "Title 11." The legislative history cited by the bankruptcy court concerning § 1328(a) makes it clear the Congress was aware of the "super discharge" provision of § 1328(a) when it enacted § 294f(g). If Congress had not intended § 294f(g) to have an effect on § 1328(a), it certainly could have worded § 294f(g) not to apply to § 1328(a). The court is unpersuaded by the contention that Congress overlooked § 1328(a) when making § 294f(g) applicable to any discharge under Title 11. Nor is the court persuaded by the "repeal by implication" argument. Section 294f(g) does not repeal § 1328(a). In cases involving HEAL loans, it merely adds to the requirement in § 1328(a) that all payments under the confirmed plan be made the additional requirements that the discharge not be granted until after five years, that the debtor establish that non-discharge would be unconscionable, and that the Secretary retain certain set off rights.

The requirements of § 294f(g) clearly impose more stringent repayment obligations on HEAL borrowers than are imposed on other types of student borrowers. This distinction, however, is not surprising in that HEAL borrowers are entering the very lucrative health care profession. In passing § 294f(g), Congress intended to prevent HEAL borrowers from attempting to eliminate sizeable student loan debt, paid from tax dollars, before commencing a highly remunerative profession. *In re Gronski*, 65 B.R. at 936. This policy is furthered by applying § 294f(g) to *all* discharges under title 11, including § 1328(a). Nor is the policy of § 1328(a) intended to substantially interfere with a Chapter 13 debtor's ability to obtain a discharge. A Chapter 13 debtor who completes a confirmed plan which includes a HEAL loan will most likely be able to obtain a discharge under the requirements of § 294f(g). Since most Chapter 13 plans are three years in length, and often are five years in length, the first requirement of § 294f(g) will usually be met at the conclusion of the plan. Also, if the plan was originated and maintained in "good faith" as required by 11 U.S.C. § 1325(a)(3), the debtor will most likely be able to show that nondischarge of the HEAL loan would be "unconscionable." For those debtors whose income has dramatically increased during the pendency of the Chapter 13

plan, a wide sweeping "fresh start" is not necessary and repayment of the HEAL loan would be conscionable. Thus, application of § 294f(g) to discharges under § 1328(a) would not contravene the policy of § 1328(a) and it would further the policy of § 294f(g).

Additionally, even if the court were to consider § 294f(g) in some way to "repeal" part of the "super discharge" obtainable under § 1328(a), the court would conclude that such a repeal was explicit and not implicit. Application of § 294f(g) to § 523(a)(8) as argued by the debtors clearly has a significant impact on § 532(a)(8) by requiring both a five year delay between the date repayment was to commence and the date of discharge *and* the unconscionability finding. Any "repeal by implication" argument applicable to § 1328(a) is equally applicable to § 523(a)(8). Yet debtors concede § 294f(g) is applicable to § 523(a)(8). Also, an identical "repeal by implication" situation is created by § 294f(g)(3) and § 294f(f) whether applied to § 523(a)(8) or to § 1328(a). Pursuant to § 294f(g)(3) and § 294f(f), the government is to retain after discharge the right of set off. Yet § 524(a)(2), applicable to all discharges under title 11, including discharges under § 1328(a), provides that

> (a) A discharge in a case under this title....
>
> (2) operates as an injunction against the commencement or continuation of an action ... to collect, recover or *offset* any such debt as a personal liability of the debtor....

(Emphasis added). This court finds that the plain language of § 294f(g) explicitly creates a "limited exception" to § 524(a)(2) in the case of HEAL loans. Likewise, the court finds that the plain language of § 294f(g) explicitly creates a "limited addition" of requirements for dischargeability to § 1328(a) in the case of HEAL loans.

### Procedure

■ In the case of David G. and Carole A. Lee, *In re David and Carole Lee,* C–87–702–A, the government filed motions to vacate the confirmation order and to modify the Chapter 13 plan to exclude the HEAL loans and also filed a complaint to revoke dischargeability. Motions to revoke or vacate a Chapter 13 confirmation order are governed by the requirements of 11 U.S.C. § 1330(a) which provides that

> On request of a party in interest at any time within 180 days after the date of the entry of an order of confirmation under section 1325 of this title, and after notice and a hearing, the court may revoke such order if such order was procured by fraud.

The order confirming the Chapter 13 plan of David and Carole Lee was entered on January 29, 1985. The government's motion to revoke that order was not filed until March 11, 1986. The government contends that its motion is nevertheless timely because it lacked adequate notice prior to confirmation. Even if the court were to accept the government's tenuous notice argument, the government's motion is defective because the government has not alleged fraud as required by § 1330(a). Therefore, the court denies the motion to revoke or vacate the bankruptcy court's confirmation order.

Motions to modify a Chapter 13 plan after its confirmation are governed by 11 U.S.C. § 1329 which provides that

> (a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim to
>
> (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
>
> (2) extend or reduce the time for such payments; or
>
> (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.
>
> (b)(1) Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of section 1325(a) of this title apply to any modification under subsection (a) of this section....

Thus, under § 1329(a), the government's motion to modify the plan to exclude from it the HEAL loans is clearly timely. The basis for the government's motion to modify is its contention that HEAL loans must be excluded from a Chapter 13 plan because the loans are nondischargeable under § 1328(a). HEAL loans are, however, conditionally dischargeable under § 1328(a) if the requirements of § 1328 have been met, i.e., completion of all payments under the plan, *and* if the requirements of § 294f(g) have been met, i.e., running of a five year time period, finding of unconscionability, and no waiver of the government's set off rights.

■ After review of the language of the relevant statutes, the case law, the principles of federalism, and the intent of the relevant statutes, the court finds no basis for concluding that conditionally dischargeable HEAL loans cannot be included, at the debtor's option, in a Chapter 13 plan. *In re Gronski*, 65 B.R. at 936 (finding inclusion of HEAL loans to be at option of debtor and that presence of HEAL loans is not a basis for refusing to confirm a plan). Therefore, the only ground for modification offered by the government having been found to be without merit, the court denies the government's motion to modify the Chapter 13 plan to exclude HEAL loans.

■ Finally, the government has filed a complaint to determine the dischargeability of the HEAL loans included in the Chapter 13 plan of David and Carole Lee. The initial concern of the court is the timeliness of the complaint. This court agrees with the conclusion in *In re Cleveland*, 64 B.R. at 812, that "in the absence of a specific statute of limitations either in the Bankruptcy Rules or in § 294f, ... a complaint to determine the dischargeability of a HEAL loan may be filed at any time before the discharge is granted." If the debt the dischargeability of which is at issue (1) is arguably one of two exceptions provided for in § 1328(a), i.e., certain long term debt and alimony and child support, or (2) is a debt not provided for in the debtor's Chapter 13 plan, or (3) is a debt provided for in the plan but which has gone into default,

then it would be appropriate for a court to determine, before completion of the Chapter 13 plan, whether that debt is nondischargeable under § 1328(a). In the instant case, however, a HEAL loan may or may not be dischargeable under § 1328(a) depending on whether *at the time discharge is sought* the requirements of § 294f(g) have been met. It is premature at this time, therefore, for the court to find that a HEAL loan, like any other unsecured debt provided for in a Chapter 13 plan, is or is not dischargeable under § 1328(a). No debt is dischargeable under § 1328(a) until successful completion of all payments under a Chapter 13 plan. The mere fact that at this time all the requirements of § 1328(a) and 294f(g) have not yet been met, however, is not probative of whether at completion of the plan those requirements will be met. Because it is possible that the HEAL loans of David and Carole Lee are dischargeable under § 1328(a) if at the time of successful completion of their Chapter 13 plan the requirements of § 294f(g) are also met, the court will dismiss at this time the government's complaint to revoke the dischargeability of the HEAL loans without prejudice to the bringing of a similar complaint upon completion of the plan or at such earlier time as the plan may go into default. It is at that time that the court can appropriately determine whether a HEAL loan is or is not dischargeable under §§ 1328(a) and 294f(g). There is no indication in § 294f(g) that a HEAL loan be treated any different under a Chapter 13 plan than other educational or unsecured debts except that at the time discharge is to be granted certain additional specific requirements must be met.

The above analysis applies with equal force to the identical motions and complaints filed in the cases of Paul Levine, *In re Levine*, C–87–703–A, and Jerry Hochman, *In re Hochman*, C–87–704–A. The case of Michelle Alexander, *In re Alexander*, C–87–705–A, is procedurally in a different posture. The Chapter 13 plan of Michelle Alexander, which provided for the HEAL loans, was timely objected to by the government. The government's objection does not contest the "good faith" of the

plan or any of the other prerequisites to confirmation of the plan which are contained in § 1325. Rather the objection contends that HEAL loans should be excluded from Chapter 13 plans. As noted above, the court concludes that a debtor may include a HEAL in a Chapter 13 plan. *In re Gronski*, 65 B.R. at 936. Therefore, the court affirms the bankruptcy court's (1) overruling of the government's objection and (2) confirmation of the Chapter 13 plan of Michelle Alexander. Likewise, in the case of William Schneider, *In re Schneider*, C–87–706–A, the court overrules the government's objection that HEAL loans may not be provided for in a Chapter 13 plan.

### Conclusion

Accordingly, the court reverses in part and affirms in part the ruling of the bankruptcy court in these Chapter 13 cases. The court affirms the decision of the bankruptcy court (1) to deny the government's motions to revoke and to modify and (2) to overrule the government's objections to the confirmation of the Chapter 13 plans. The court, however, reverses the bankruptcy court's holding that § 294f(g) does not govern discharge of Health Education Assistance Loans in Chapter 13 cases but also directs that the government's complaints to determine dischargeability be dismissed at this time without prejudice.